UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LOUISE DEMARCO,

                                        Plaintiff,

                - against-

BEN KRUPINSKI GENERAL CONTRACTOR,
INC. and BEN KRUPINSKI, individually,

                                        Defendants.
------------------------------------------------------------X
FEUERSTEIN, J.

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUL 22 2014   ★

**LONG ISLAND OFFICL**

**OPINION AND ORDER**
**12-CV-0573 (SJF)(ARL)**

On February 7, 2012, plaintiff Louise DeMarco ("plaintiff") commenced this employment

discrimination action against defendants Ben Krupinski General Contractor, Inc. ("BKGC") and

Ben Krupinski ("Krupinski"), individually, alleging, *inter alia*, discrimination based upon her

disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et*

*seq.*, and the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 296, *et seq.*,

and violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*

Following a bifurcated jury trial, the jury found, *inter alia*, that plaintiff proved by a

preponderance of the evidence that her employment was terminated by defendants and awarded

plaintiff damages in the total amount of seven thousand eight hundred forty dollars ($7,840.00)

to compensate her for a net loss of wages and benefits to the trial date. Judgment was entered

upon the jury verdict on September 30, 2013. Pending before the Court is plaintiff's motion for

attorney's fees and costs pursuant to 42 U.S.C. § 12205. For the reasons set forth below,

plaintiff's motion is granted to the extent set forth herein.

1

I.    DISCUSSION

      A.    Attorney's Fees

Plaintiff sees to recover fifty-nine thousand three hundred forty-two dollars and fifty cents ($59,342.50) in attorney's fees based upon, *inter alia*: (a) an hourly rate of three hundred fifty dollars ($350.00) for services performed by Costantino Fragale, the principal of the Law Offices of Costantino Fragale and a self-proclaimed "seasoned civil rights litigator," (Plf. Mem. at 6); and (b) an hourly rate of two hundred dollars ($200.00) for services performed by Nicholas Curtiss-Rowlands, "an associate who graduated in the top ten percent of his law school, and graduated from both law school and college with *Magna Cum Laude*," (id. at 7).

Under the "American Rule" "historically applied" by courts in the United States, Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d at 186 (2d Cir. 2008), "parties are ordinarily required to bear their own attorney's fees * * * absent explicit statutory authority." Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), superceded on other grounds by Open Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524. As is relevant here, Congress has authorized the award of attorney's fees to the "prevailing party" in actions under, *inter alia*, the ADA. Specifically, Section 12205 of Title 42 of the United States Code provides, in relevant part, that "[i]n any action * * * commenced pursuant to this chapter, the court * * *, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee, including litigation expenses, and costs * * *."

In cases under federal statutes authorizing the court to award "a reasonable attorney's fee" to a prevailing private party, e.g., actions under the ADA, 42 U.S.C. § 12205; Titles II and VII of

2

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a-3(b) and 2000e-5(k), respectively; the Age

Discrimination in Employment Act, 29 U.S.C. § 626(b); the Fair Housing Act, Title VIII of the

Civil Rights Act of 1968, 42 U.S.C. § 3613(c)(2); the Voting Rights Act Amendments of 1975,

42 U.S.C. § 1973.*l*(e); the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b); the Individuals with

Disabilities Education Act, 20 U.S.C. § 1415(i)(3)(B)(i); the Civil Rights Attorney's Fees

Awards Act of 1976, 42 U.S.C. § 1988(b), etc., "the governing principles and procedures are

essentially the same." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009); see also Buckhannon,

532 U.S. at 603 n. 4, 121 S. Ct. 1835 ("We have interpreted the[] fee-shifting provisions [in Title

VII, the Voting Rights Act Amendments of 1975 and Section 1988] consistently * * *.")

It is undisputed that plaintiff is a "prevailing party" in this action, see generally

Buckhannon, 532 U.S. at 603, 121 S. Ct. 1835, and, thus, may be awarded a reasonable

attorney's fees and costs under Section 12205 of the ADA.

"In calculating attorney's fees, the district court must first determine the 'lodestar–the

product of a reasonable hourly rate and the reasonable number of hours required by the case–

[which] creates a presumptively reasonable fee.'" Stanczyk v. City of New York, 752 F.3d 273,

284 (2d Cir. 2014) (brackets in original) (quoting Millea v. Metro-N. R.R. Co., 658 F.3d 154,

166 (2d Cir. 2011)); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed.

2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable

[attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate."); Bergerson v. New York State Office of Mental Health, Central New

York Psychiatric Center, 652 F.3d 277, 289 (2d Cir. 2011) ("Attorneys' fees are awarded by

determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by

3

the number of reasonably expended hours.") The burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed. Hensley, 461 U.S. at 437, 103 S.Ct. 1933.

   1.    Reasonable Hourly Rate

Defendants contend that the hourly rates sought for services performed by Mr. Fragale and his first-year associate, Mr. Curtiss-Rowlands, are unreasonable; that Mr. Fragale is entitled to an hourly rate of "no more than $200," (Def. Mem. at 8); and that Mr. Curtiss-Rowlands is entitled to an hourly rate of "no more than $100[.]" (Id.)[1]

In calculating a "presumptively reasonable [attorney's] fee,"[2] Arbor Hill, 522 F.3d at 190, courts must consider "*all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. (emphasis in original); see also Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 151-52 (2d Cir. 2008) (accord). "[A] presumptively reasonable [attorney's] fee "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons v. New York City Transit Authority, 575 F.3d 170, 174 (2d Cir. 2009) (quoting Arbor Hill, 522 F.3d at 184);

---

[1] Defendants also contend that the hours reflected in the billing entries of Mr. Fragale and Mr. Curtiss-Rowlands should be reduced, *inter alia*, to account for plaintiff's "overall lack of success" in this action. (Def. Mem. at 9). However, as set forth below, the degree of success in an action is properly considered in determining an attorney's reasonable hourly rate rather than upon consideration of the reasonableness of the hours expended.

[2] In Arbor Hill, the Second Circuit abandoned the use of the term "lodestar" in favor of "the presumptively reasonable fee." 522 F.3d at 190.

4

see also Bergerson, 652 F.3d at 289-90 (accord).

In Arbor Hill, the Second Circuit held that in determining a reasonable hourly rate, district courts should consider, *inter alia*, the following twelve (12) factors developed by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) ("the Johnson factors"):

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

522 F.3d at 187 n. 3, 190. In sum, "in calculating the reasonable hourly rate for particular legal services, a district court should consider all relevant circumstances in concluding what a reasonable client would expect to pay." Id. at 184 n. 2. "The district court should then use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'" Id. at 190.

"[T]he nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." Arbor Hill, 493 F.3d at 184 n. 2. However, "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." Barfield, 537 F.3d at 152 (quoting Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)). "If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended

5

on the litigation as a whole times a reasonable hourly rate may be an excessive amount[,]"
Farrar, 506 U.S. at 114, 113 S. Ct. 566 (quotations and citation omitted), and "the district court
should award only that amount of fees that is reasonable in relation to the results obtained."
Hensley, 461 U.S. at 440, 103 S. Ct. 1933.

"A district court's assessment of the 'degree of success' achieved in a case is not limited
to inquiring whether a plaintiff prevailed on individual claims." Barfield, 537 F.3d at 152.
"Both 'the quantity and quality of relief obtained,' as compared to what the plaintiff sought to
achieve as evidenced in her complaint, are key factors in determining the degree of success
achieved." Id.; see also Farrar, 506 U.S. at 114, 113 S. Ct. 566 ("Where recovery of private
damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to
give primary consideration to the amount of damages awarded as compared to the amount
sought." (quotations and citation omitted)). "Indeed, this comparison 'promotes the court's
central responsibility to make the assessment of what is a reasonable fee under the circumstances
of the case.'" Barfield, 537 F.3d at 152 (quoting Farrar, 506 U.S. at 114-15, 113 S. Ct. 566
(internal quotations and citation omitted)). "Having considered the amount and nature of
damages awarded, the court may lawfully award low fees or no fees without reciting the 12
[Johnson] factors bearing on reasonableness, * * * or multiplying the number of hours reasonably
expended . . . by a reasonable hourly rate * * *." Farrar, 506 U.S. at 115, 113 S. Ct. 566
(quotations and citations omitted).

Under the "forum rule," "courts should generally use the hourly rates employed in the
district in which the reviewing court sits in calculating the presumptively reasonable fee."
Simmons, 575 F.3d at 174 (quotations and citations omitted); see also Bergerson, 652 F.3d at

6

290 (accord). Thus, in determining a reasonable hourly rate, the court should consider the prevailing rates of lawyers with comparable skill, experience and reputation in the district in which the action was commenced and litigated. Missouri v. Jenkins by Agyei, 491 U.S. 274, 286, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989); McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006). Rates should be "current rather than historic hourly rates." Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006) (quoting Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).

Recent prevailing hourly rates for attorneys practicing in the Eastern District of New York are: (a) between two hundred to four hundred fifty dollars ($300.00-$450.00) for partners in large law firms and attorneys with extensive litigation experience or significant experience in the particular area of law at issue, see, e.g. Sheet Metal Workers National Pension Fund v. Evans, No. 12-cv-3049, 2014 WL 2600095, at * 9 (E.D.N.Y. June 11, 2014) (finding that an hourly rate of three hundred dollars ($300.00) was a reasonable rate for a partner admitted to practice law in New York for more than forty-five [45] years, and in the Eastern District for more than forty [40] years, who spent his entire career practicing labor relations and employee benefits law, in a *pro se* case involving uncomplicated issues); Small v. New York City Transit Authority, No. CV 2003-2139, 2014 WL 1236619, at * 5 (E.D.N.Y. Mar. 25, 2014) (finding that courts have approved hourly rates for partners in this district of between two hundred to four hundred fifty dollars [$200.00-$450.00]); Brown v. Green 317 Madison, LLC, No. 11 CV 4466, 2014 WL 1237448, at * 10 (E.D.N.Y. Feb. 4, 2014), report and recommendation adopted by 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014) (finding that an hourly rate of three hundred fifty dollars [$350.00] was reasonable for a partner and co-founder of a law firm who claimed to be a

7

"'seasoned civil rights litigator,' who has personally handled 'hundreds' of ADA barrier removal cases and who supervises the other members and associates of the Firm in similar cases throughout the country"); Hugee v. Kimso Apts., LLC, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012) ("The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the [area of law at issue] and are recognized by their peers as leaders and experts in their fields"); (b) between two hundred to three hundred twenty-five dollars ($200.00-$325.00) for senior associates or attorneys with more limited experience, Brown, 2014 WL 1237448, at * 10 (finding that an hourly rate of two hundred seventy-five dollars [$275.00] was reasonable for an attorney practicing law for approximately twelve [12] years; who worked as a prosecutor for several years and for several civil litigation firms until she founded her own law firm, then became a member of a law firm in which she was a named partner and who, *inter alia*, handled approximately forty-five [45] cases in the Eastern and Southern Districts of New York); Claudio v. Mattituck-Cutchogue Union Free School District, No. 09-cv-5251, 2014 WL 1514235, at * 14 (E.D.N.Y. Apr. 16, 2014) (finding an hourly rate of two hundred fifty dollars [$250.00] to be reasonable for an attorney who was a solo practitioner for twenty-five [25] years, but who did not have significant experience in the area of employment discrimination cases); and (c) between one hundred to two hundred dollars ($100.00-$200.00) for junior associates or attorneys with little or no experience.  See, e.g. Sheet Metal Workers, 2014 WL 2600095, at * 9; Ferrara v. Professional Pavers Corp., No. 11-cv-1433, 2013 WL 1212816, at * 5 (E.D.N.Y. Mar. 23, 2013) (finding the prevailing hourly rates for, *inter alia*, junior associates in the Eastern District of New York to be one hundred to two hundred dollars [$100.00-$200.00]).  "Of course, in light of the numerous factors that courts in this circuit

8

consider to determine a reasonable hourly rate, 'the range of "reasonable" attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.'" Sheet Metal Workers, 2014 WL 2600095, at * 9 (quoting Siracuse v. Program for Development of Human Potential, No. 07-cv-2205, 2012 WL 1624291, at * 30 (E.D.N.Y. Apr. 30, 2012)); see also Brown, 2014 WL 1237448, at * 8 ("[B]illing rates in this district vary widely depending on the nature and difficulty of the case and the experience of the attorneys involved.") Moreover, "the size and caliber of a firm may also be considered when determining a reasonable hourly rate * * *." Bobrow Palumbo Sales, Inc. v. Broan-Nutone LLC, 549 F. Supp. 2d 274, 280 (E.D.N.Y. 2008); see also Hugee, 852 F. Supp. 2d at 299 ("The size of the firm may be considered [in determining a reasonable hourly rate], as large firms tend to charge higher hourly rates than small firms.")

### a. Mr. Fragale

Mr. Fragale does not indicate the usual rate that he charges his regular, paying clients; whether he has ever tried an employment discrimination case before a jury in federal court prior to this case; whether plaintiff has paid him any fees; or the nature or length of his professional relationship with plaintiff.[3] This case involved only three (3) claims, i.e. two (2) employment discrimination claims under federal and state law, respectively, and one (1) claim under the FMLA, that were not novel, complex or undesirable and which did not require an extraordinary expenditure of time or labor. Nor were any unusual time limitations imposed in this case.

---

[3] In plaintiff's reply, plaintiff indicates only that her "attorneys took this action on a contingent basis * * *." (Reply at 3).

At the time of the trial, Mr. Fragale had been admitted to practice law in this district for approximately ten (10) years, (Fragale Aff., ¶ 6, Ex. C), and had worked as an associate for the products liability department at Chadbourne & Parke, LLP, for one (1) year and as an associate for the Law Offices of Todd J. Krouner in Chappaqua, New York, where he broadly claims that he "handle[d] employment discrimination and civil rights actions from commencement to completion," for one (1) year. (Fragale Aff., Ex. C). Since January 2004, Mr. Fragale has been the principal of the Law Offices of Costantino Fragale, which he describes as "a boutique law office which specializes in litigation, including employment discrimination, commercial disputes and torts." (Id.) However, Mr. Fragale's website indicates that he is either a solo practitioner or the principal of a small law firm and emphasizes that he is "Commercial Dispute Lawyer," a "Personal Injury Law Firm," a "Trial Attorney"and a "Vehicle Accident Lawyer." See www.http://fragale-law.glfsites.com/.[4] The only mention to the area of employment discrimination is in much smaller, barely discernible, font at the top of the page indicating that Mr. Fragale is an "Eastchester Attorney and Legal Adviser, [who] practices Litigation, Personal Injury, and Employment Law." See id.

In addition, Mr. Fragale identifies only eight (8) employment discrimination cases that he has ever handled. However, of the four (4) employment discrimination cases Mr. Fragale handled in this district since 2003, two (2) were settled prior to trial, Grice v. Time Warner Cable, No. 05-cv-1995 (ILG)(RML) (settled during mediation on November 15, 2006) and Goodstein v. J.P. Morgan Chase, No. 05-cv-6007 (ERK)(KAM) (settled in February 2007); Mr.

_____

[4] "A court may take judicial notice of a website." Small, 2014 WL 1236619, at * 6 n. 2 (citing United States v. Akinrosotu, 637 F.3d 165, 168 (2d Cir. 2011)).

Fragale withdrew as counsel for the plaintiff prior to resolution of another action, Bailey v. Family Residence and Essential Enterprises, Inc., No. 03-cv-6350 (Jan. 20, 2005); and Mr. Fragale withdrew the amended complaint and voluntarily dismissed the action with prejudice in the other action, Zucker v. Five Towns College, No. 09-cv-4884 (JS).[5] Thus, at the time of trial,

---

[5] Mr. Fragale has also been admitted in the United States Court of Appeals for the Second Circuit since 2006. (Fragale Aff., ¶ 6). In two (2) cases in which he represented appellant-employees, Mr. Fragale was successful in having orders granting summary judgment in favor of employers partially vacated or reversed. See Castagna v. Luceno, 558 F. App'x 19 (2d Cir. Mar. 5, 2014) (affirming in part and vacating in part order granting summary judgment to employer); Hartnett v. Fielding Graduate Institute, 198 F. App'x 89 (2d Cir. Sept. 21, 2006) (affirming in part and reversing in part order granting summary judgment to employer). In a third case, Mr. Fragale was successful in having an order granting an employer's motion to dismiss vacated in part. Pignone v. Village of Pelham Manor, 521 F. App'x 19 (2d Cir. Mar. 29, 2013). Although Mr. Fragale was partially successful on those three (3) appeals, he does not indicate what the final resolution, if any, of those cases was in the district courts. Morever, Mr. Fragale fails to mention the two (2) appeals in which he represented appellant-employees and did not prevail. See Davis v. Oyster Bay-East Norwich Central School District, 473 F. App'x 14 (2d Cir. Mar. 22, 2012) (affirming order granting summary judgment in favor of employer); Fraterrigo v. Akal Sec., Inc., 376 F. App'x 40 (2d Cir. Apr. 27, 2010), cert. denied, 131 S. Ct. 598, 178 L. Ed. 2d 453 (2010) (affirming order granting summary judgment in favor of employer). In addition, although Mr. Fragale indicates, inter alia, that he was the prevailing party in Liberti v. Opus Advisory Group LLC, No. 09-cv-2993, and Schumacker v. Cigna Orthodontics, No. 3881/10 (N.Y. Sup. Ct., Dutchess Co.), (Plf. Mem. at 6-7), he does not indicate the nature or outcome of those cases. Of the two (2) federal district court and six (6) New York State court cases in which Mr. Fragale appeared that the Court found on Westlaw, none involved claims for employment discrimination. See In re DiDomenico, 101 A.D.3d 998, 956 N.Y.S.2d 122 (N.Y. App. Div. 2012) (a contested probate proceeding); Vaccarino v. Mad Den, Inc., 100 A.D.3d 867, 955 N.Y.S.2d 122 (N.Y. App. Div. 2012) (action to recover damages for breach of contract); Loevner v. Loevner, 81 A.D.3d 791 (N.Y. App. Div. 2011) (action to recover damages for fraud and breach of fiduciary duty); Schaefer v. Brookdale University Hospital and Medical Center, 66 A.D.3d 985, 888 N.Y.S.2d 122 (N.Y. App. Div. 2009) and 46 A.D.3d 662, 847 N.Y.S.2d 222 (N.Y. App. Div. 2007) (action to recover damages for breach of contract and defamation); Sturino v. Nino Tripicchio & Son Landscaping, 65 A.D.3d 1327, 885 N.Y.S.2d 625 (N.Y. App. Div. 2009) (action to recover on a promissory note); Desia v. GE Life and Annuity Assur. Co., No. 05-cv-1395, 2008 WL 4724080 (D. Conn. Oct. 24, 2008), aff'd, 350 F. App'x 542 (2d Cir. Oct. 28, 2009) and 2007 WL 951682 (D. Conn. Mar. 26, 2007) (breach of annuity contracts); Weber v. Goss, 18 A.D.3d 540, 794 N.Y.S.2d 661 (N.Y. App. Div. 2005) (action to recover damages for libel); and Palumbo v. Manhattan and Bronx Surface Transit Operating Authority, 346 F. Supp. 2d 493 (S.D.N.Y. 2004) (Section 1983 claim alleging due process violations and

Mr. Fragale had only limited skill and experience prosecuting employment discrimination cases in this district and no experience actually litigating employment discrimination claims before a jury. Moreover, throughout the litigation of this case, Mr. Fragale did not demonstrate any specialized knowledge or skill in the area of employment discrimination law.

Furthermore, Mr. Fragale achieved only minimal success for plaintiff. Following the trial on the issue of liability, the Court dismissed plaintiff's FMLA claim because Mr. Fragale failed to establish all of the elements of such a claim, leaving only a disability discrimination claim under federal and state law. Moreover, although plaintiff sought, *inter alia*, to recover compensatory damages for emotional pain and mental anguish, back pay, front pay and punitive damages on her employment discrimination claims, the jury awarded her only back pay in a much lower amount than she sought, i.e., plaintiff sought to recover back pay for the entire period from the date of her termination on or about March 26, 2011 to the date of trial in September 2013, an approximate one hundred thirty (130)-week period, yet the jury only awarded plaintiff back pay for an eight (8)-week period, i.e., she was awarded approximately six percent (6%) of the back pay she sought.

Accordingly, upon consideration of all of the Johnson factors, particularly Mr. Fragale's level of experience in the area of employment discrimination, which was much closer to a senior associate than to a seasoned trial attorney specializing in employment discrimination cases whose hourly rate he seeks to be awarded, and the minimal results obtained by Mr. Fragale in comparison to what plaintiff sought in the complaint, I find that an hourly rate of two hundred fifty dollars ($250.00) is a reasonable rate to award an attorney of Mr. Fragale's experience and

---

claim against union for breach of duty of fair representation).

competence.

    b.    Mr. Curtiss-Rowlands

Mr. Curtiss-Rowlands received his *Juris Doctor* degree approximately sixteen (16)

months prior to the trial and was admitted to the New York bar approximately seven (7) months

prior to the trial. (Fragale Aff., Ex. E) Other than several legal internships, none of which

involved the area of employment discrimination, Mr. Curtiss-Rowlands's only legal experience

at the time of the trial was as an associate with Mr. Fragale for approximately one (1) year, and

his only experience in the area of employment discrimination was that he "[p]erform[ed] legal

research on a range of issues, including: employment law * * *." (Id.) Accordingly, I find that

an hourly rate of one hundred dollars ($100.00) is a reasonable rate to award an attorney of Mr.

Curtiss-Rowlands's experience and competence.


    c.    Rates for Travel

Since "courts in the Second Circuit often reduce attorneys' fees for travel time by 50

percent * * *[,]" Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc., 881 F. Supp. 2d 482,

490 (S.D.N.Y. 2012); LV v. New York City Department of Education, 700 F. Supp. 2d 510, 526

(S.D.N.Y. 2010) (accord); Germain v. County of Suffolk, 672 F. Supp. 2d 319, 326-27 (E.D.N.Y.

2009) (accord), Mr. Fragale will be compensated for his travel time at an hourly rate of one

hundred twenty-five dollars ($125.00) and Mr. Curtiss-Rowlands will be compensated for his

travel time at an hourly rate of fifty dollars ($50.00).


                                        13

## 2.    Hours Reasonably Expended

Defendants contend that the hours that Mr. Fragale and Mr. Curtiss-Rowlands claim to have expended in litigating this action should be reduced because, *inter alia*, plaintiff did not prevail on her FMLA claim or her motion *in limine*; plaintiff's "recovery was de minimis," (Def. Mem. at 11); and the billing entries are duplicative and vague, and include "block billing" and tasks more properly performed by a paralegal or clerical worker.

"Applications for awards of fees must be documented by time records." Bliven, 579 F.3d at 213; see also McDonald, 450 F.3d at 96 ("In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials."); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.") "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 432, 103 S. Ct. 1933.

"[O]nly those hours 'reasonably expended' are to be awarded." McDonald, 450 F.3d at 96 (quoting Hensley, 461 U.S. at 434-35, 103 S. Ct. 1933). In determining the amount of hours reasonably expended, the court must:

> "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts. * * * In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

14

(Citations omitted)."

Gierlinger, 160 F.3d at 876; see also Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997) ("In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.")

"[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from the attorney's fee calculation. See Hensley, 461 U.S. at 434, 103 S.Ct. 1933; see also Bliven, 579 F.3d at 213; Kirsch, 148 F.3d at 173. "Courts may reduce the number of hours in a fee application where the time entries submitted by counsel are too vague to sufficiently document the hours claimed." Barclays Capital Inc. v. Theflyonthewall.com, No. 06 Civ. 4908, 2010 WL 2640095, at * 4 (S.D.N.Y. June 30, 2010); see also Tucker v. City of New York, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) ("[F]ee applications must be accompanied by contemporaneous time records * * * which must adequately identify the general subject matter of the work that the attorney did during each time slot. * * * This requirement is generally not satisfied by vague entries such as 'conference with' or 'call to' a specified person * * *, although the court may be able to deduce the nature and relevance of a generally described time entry based on its familiarity with the case or other contextual clues."); LV, 700 F. Supp. 2d at 526 (holding that entries that omit information about the subject matter of the work, e.g., "meeting w/co-counsel" and "conference w/co-counsel," justify a reduction in the hours expended); Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (holding that entries such as "letter to [opposing counsel]," "telephone call to [opposing counsel]" and "discussion with [opposing counsel]" are "overly vague" and "[t]hus courts commonly make percentage

15

reductions for [them].")

"Courts may also make reductions for 'block-billing,' that is, the practice of 'aggregating multiple tasks into one billing entry[,]" Barclays Capital, 2010 WL 2640095, at * 4 (quoting Adorno v. Port Authority of New York and New Jersey, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010), reconsideration granted on other grounds, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010) (citation omitted)); see also Linde v. Arab Bank, PLC, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) ("Where billing records include a large number of block-billed entries and there is an issue as to the reasonableness of the number of hours counsel spent on the matter, an across-the-board reduction in billing hours is appropriate"), because "block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." Linde, 293 F.R.D. at 142; see also LV, 700 F. Supp. 2d at 525 (holding that since "block-billing can make it exceedingly difficult for courts to assess the reasonableness of the hours billed[,] * * * courts have found it appropriate to cut hours across the board by some percentage."); Miroglio, 629 F. Supp. 2d at 313-14 ("Block entries * * * have a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary. * * * Reductions are appropriate based on such entries as well." (quotations, alterations and citations omitted)). Nonetheless, "[w]hile 'block-billing' is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the court can determine the reasonableness of the work performed." Adorno, 685 F. Supp. 2d at 515.

In addition, "[u]nreasonable duplication of effort * * * warrant[s] a reduction." Linde,

293 F.R.D. at 141; see also Bridges v. Eastman Kodak Co., 102 F.3d 56, 59 n. 2 (2d Cir. 1996) (affirming reduction in attorney's fees to reflect, *inter alia*, "duplication of efforts"); Wong v. Mangone, 450 F. App'x 27, 32 (2d Cir. Dec. 6, 2011), cert. denied 133 S. Ct. 101, 184 L. Ed. 2d 22 (2012) (summary order) (affirming adjustments made for duplicative hours). "While the use of multiple attorneys is not unreasonable *per se*, * * * courts should reduce the hours actually expended to account for duplicative or repetitive work." LV, 700 F. Supp. 2d at 524 (alterations, quotations and citations omitted).

Moreover, "work on an unsuccessful claim [based on different facts and legal theories than the successful claim(s)] cannot be deemed to have been expended in pursuit of the ultimate result achieved * * * and therefore no fee may be awarded for services on the unsuccessful claim." Hensley, 461 U.S. at 435, 103 S. Ct. 1933 (quotations and citation omitted); see also Kirsch, 148 F.3d at 173 ("A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories[.]" (quotations and citation omitted)). Furthermore, "[w]hen calculating a lodestar, the number of hours spent on a case should include only those hours spent on claims eligible for fee-shifting." Millea, 658 F.3d at 168. "Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar[,]" id.; see also Finch v. New York State Office of Children and Family Services, 861 F. Supp. 2d 145, 152 (S.D.N.Y. 2012) (accord); except that "[h]ours spent on legal work that furthers both fee-shifting and non-fee-shifting [or unsuccessful fee-shifting] claims may be included in the lodestar calculation because they would have been expended even if the plaintiff

had not included non-fee-shifting [or unsuccessful fee-shifting] claims in his complaint." Millea, 658 F.3d at 168 n. 4.

Likewise, fees should not be awarded for time expended on an unsuccessful motion, see, e.g. Quaratino v. Tiffany & Co., 166 F.3d 422, 427 (2d Cir. 1999) (affirming the district court's finding, *inter alia*, that fees should not be awarded for time spent on the plaintiff's unsuccessful motion for a new trial); Custodio v. American Chain Link and Construction, Inc., No. 06 Civ. 7148, 2014 WL 116147, at * 2 (S.D.N.Y. Jan. 13, 2014) (recommending that hours spent on an unsuccessful class certification motion be deducted from the attorneys' time), or on requests for adjournments or extensions of time. See, e.g. Bridges, 102 F.3d at 59 (affirming reduction of attorneys' fees due to, *inter alia*, time spent requesting extensions); Soler v. G&U, Inc., 801 F. Supp. 1056, 1063 (S.D.N.Y. 1992) (excluding from award of attorney's fees "time spent by * * * attorneys * * * seeking adjournments and extensions.")

Courts may also deduct "time spent on clerical tasks, such as faxing documents, preparing duplicates, serving papers on defendants, and filing documents * * *." Miroglio, 629 F. Supp. 2d at 314; see also Bridges, 102 F.3d at 59 (affirming reduction of attorney's fees due to, *inter alia*, clerical and administrative tasks); Kahlil v. Original Old Hempstead Restaurant, Inc., 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (holding that attorneys "should not be compensated for the time * * * spent executing purely clerical tasks, like downloading documents, * * * filing, and faxing documents."); Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012) ("A court may reduce requested fees if the attorneys' documentation of their hours * * * reflect work that could or should have been completed by a paralegal or secretary."); G.B. ex rel. N.B. v. Tuxedo Union Free School District, 894 F. Supp. 2d 415, 439 (S.D.N.Y. 2012) (holding that an

attorney "should not be fully reimbursed for the time she spent reorganizing the file and preparing exhibits * * * [because] preparation of trial exhibits is * * * work properly performed by paralegals, and is reimbursable as such[,] * * * [and] reorganizing the file * * * is a clerical non-reimbursable task."); Soler, 801 F. Supp. at 1063 (excluding from attorney's fees "time spent * * * by attorneys organizing files * * *.")

In reducing the amount of attorney's fees, the court may exclude the excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours. See McDonald, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application (quotations and citation omitted)); Kirsch, 148 F.3d at 173 (accord).

### a.    Billing Entries of Mr. Fragale

Mr. Fragale's billing entries improperly contain time spent performing clerical tasks or work properly performed by a paralegal and seeking extensions of time. For example, Mr. Fragale bills a half (.5) hour at his full hourly rate for "[f]il[ing] complaint with the Clerk of the Eastern District in Manhattan [sic]" on February 7, 2012, as well as one (1) hour of travel time for that same task; one and a quarter (1.25) hours to "[p]repare *and file*" (emphasis added) proposed voir dire questions on May 27, 2013; a half (.5) hour to "[c]opy * * * documents on a disc for the Court's convenience" on May 27, 2013; and a quarter (.25) hour on a three (3)-sentence "[m]otion to extend time to file motion to set aside verdict and attorneys fees and costs" on September 27, 2013. (Fragale Aff., Ex. C).

In addition, some of Mr. Fragale's billing entries are excessive, e.g., for two (2) status

conferences with the Court, on June 21, 2012 and September 19, 2012, respectively, Mr. Fragale billed for a half (.5) hour, when the Court's records indicate that the conferences lasted only fifteen (15) minutes; he billed a half (.5) hour to "[p]repare and file"[6] a five (5)-sentence letter to the Court on February 15, 2013; and he billed three tenths (.3) of an hour, or eighteen (18) minutes, for a three (3)-sentence "[l]etter from Plaintiff to Magistrate Judge Lindsay requesting a conference pursuant to Court order."

Moreover, several of Mr. Fragale's billing entries contain "block billing," e.g. Mr. Fragale billed one and a quarter (1.25) hours for "[m]eeting with client and draft [sic] retainer agreement" on June 25, 2011; one and a quarter (1.25) hours to "[p]repare charge of discrimination, rider, 4 copies and cover letter with the EEOC"[7] on July 1, 2011; two and a half (2.5) hours to "[r]eview [unspecified] documents and prepare deposition outline of Christine Hupalowski" on August 25, 2012; four and three-quarter (4.75) hours to "[p]repare digests of deposition transcripts and Plaintiff's First Request for production of documents; First Set of Interrogatories, and Rule 26 disclosures" on December 12, 2012, etc.

Furthermore, Mr. Fragale is not entitled to recover any time expended for performing research relating to plaintiff's unsuccessful FMLA claim and preparing plaintiff's unsuccessful motion *in limine*. See, e.g. Millea, 658 F.3d at 168; Quaratino, 166 F.3d at 427. Accordingly,

---

[6] Moreover, the filing of the letter is a non-compensable clerical task. See, e.g. Agudelo v. E & D LLC, No. 12 cv 960, 2013 WL 1401887, at * 3 (S.D.N.Y. Apr. 4, 2013); Kahlil, 657 F. Supp. 2d at 477.

[7] Moreover, copying is a non-compensable clerical task. See, e.g. Tucker, 704 F. Supp. 2d at 356 (holding, *inter alia*, that "the copying and mailing of pleadings or other documents" is "work that can be done by a clerical person or at most a paralegal."); Miroglio, 629 F. Supp. 2d at 314.

the two and a half (2.5) hours he billed for "[r]esearch regarding the right to have intermittent leave of absences and/or modified work scheduled [sic] under the ADA, FMLA and NYSHRL when one suffers from a disability" on May 15, 2013 must be reduced to account for the time spent on the FMLA claim; and the three and a quarter (3.25) hours he billed for "[m]otion in limine prepare and file notice of motion, Affirmation of Costantino Fragale and exhibits therewith" on May 17, 2013, as well as the one and a quarter (1.25) hours he billed to "[p]repare and file Reply Affirmation in support of motion in limine" on May 27, 2013, must be excluded. (Fragale Aff., Ex. C).

In light of the aforementioned improprieties in Mr. Fragale's billing entries, the one hundred and three tenths (100.3) hours for which he seeks to be compensated a full hourly rate are reduced across-the-board by thirty percent (30%), i.e., to seventy and twenty-one hundredths (70.21) hours, and one (1) hour will be deducted from his twenty-eight and a half (28.5) hours of travel time to reflect his performance of a clerical task, i.e., the filing of the complaint. Accordingly, plaintiff is awarded attorney's fees in the amount of seventeen thousand five hundred fifty-two dollars and fifty cents ($17,552.50) for the services Mr. Fragale performed at a full hourly rate, which, as set forth above, is two hundred fifty dollars ($250.00), and three thousand four hundred thirty-seven dollars and fifty cents ($3,437.50) for his travel time.


b.      Billing Entries of Mr. Curtiss-Rowlands

Mr. Curtiss-Rowland's billing entries also improperly contain time spent on performing clerical tasks or work properly performed by a paralegal; are occasionally excessive and/or impermissibly vague; and contain "block billing." For example, Mr. Curtiss-Rowlands block-

billed, *inter alia*, five (5) hours for "[r]eviewing documents in file, preparing draft pretrial order, jury instructions, jury verdict forms, plaintiff's proposed voir dire and conference with Costantino Fragale" on May 22, 2013; two (2) hours for "preparing and revising draft jury instructions, jury verdict forms, plaintiff's proposed voir dire" on May 27, 2013[8]; five (5) hours for "[o]rganizing file and preparing draft opening statement"[9] on September 12, 2013; four and a half (4.5) hours for "[g]etting transparencies for trial, reviewing deposition transcripts[,] conferencing with Costantino Fragale, trial preparation"[10] on September 13, 2013; and three (3) hours for "[d]rafting outline for direct of [plaintiff], preparing trial exhibits" on September 20, 2013. (Fragale, Ex. D).

Mr. Curtiss-Rowlands's billing entries of a half (.5) hour and one (1) hour for "conversation[s] with [plaintiff]" on September 21 and 22, 2013 are overly vague and further justify a reduction of the attorney's fees awarded for work performed by him, and his billing entry of a quarter (.25) hour for "reviewing how to work the Courtroom's projector" on

---

[8] In addition, Mr. Curtiss-Rowlands billed one and a half (1.5) hours for "[r]evising pretrial order" on May 23, 2013 and one (1) hour for "[p]reparing witness addresses and narratives for pretrial order," (Fragale Aff., Ex. D), for a total of nine and a half (9.5) hours. Those nine and half (9.5) hours are duplicative of the six and three quarters (6.75) hours Mr. Fragale billed for the same work. Considering, *inter alia*, the quality and length of the documents filed with the Court, billing a total of sixteen and one quarter (16.25) hours for such work is excessive and also justifies reducing the total number of hours claimed by both attorneys.

[9] Moreover, the time spent reorganizing the file "is a clerical non-reimburseable task." G.B. ex rel. N.B., 894 F. Supp. 2d at 439.

[10] In addition, "[g]etting transparencies for trial" is a non-compensable clerical task and "conferencing with Costantino Fragale," absent any indication of the subject matter of such conference, is impermissibly vague and non-compensable. See, e.g. Anthony v. Franklin First Financial Ltd., 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) (reducing attorneys' fees because, *inter alia*, it was improper to bill for "internal meetings between the attorneys assigned to the case").

September 11, 2013, (Fragale Aff., Ex. D), involves an administrative task that also justifies a reduction. See, e.g. E.S. v. Katonah-Lewisboro School District, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011), aff'd, 487 F. App'x 619 (2d Cir. July 6, 2012) ("A court may make [across-the-board percentage] reductions when attorneys engage in less skilled work, like filing and other administrative tasks.") In addition, Mr. Curtiss-Rowlands billed a total of eight and a quarter (8.25) hours researching and drafting the motion for attorney's fees, which seems excessive given, *inter alia*, that the memorandum of law in support of the motion is nine (9) pages, plus a one (1) sentence conclusion, the date and Mr. Fragale's signature on page ten (10).[11] See, e.g. id. ("[A] court should reduce the award where the requested fee is excessive because the stated number of hours is greater than that which should have been required for the work produced.")

As with Mr. Fragale, Mr. Curtiss-Rowlands is also not entitled to recover any time expended for researching and preparing plaintiff's unsuccessful motion *in limine*. Accordingly, the three and a half (3.5) hours Mr. Curtiss-Rowlands billed for "[c]ompiling research regarding admissibility of DOL records and DOL findings," which was the subject matter of the unsuccessful motion *in limine*, on April 11, 2013; the four (4) hours he billed for "drafting notice of motion in limine and affirmation in support, reviewing DOL initial uncertified FOIL responses"[12] on May 6, 2013; the one (1) hour he billed for "[r]evising motion in limine to admit

---

[11] In addition, Mr. Curtiss-Rowlands's block-billed one (1) of the entries, i.e., he billed two and a half (2.5) hours for "[d]rafting lodestar, working on compiling costs" on October 11, 2013. (Fragale Aff., Ex. D).

[12] Although the time spent "reviewing DOL initial uncertified FOIL responses" is arguably billable, since Mr. Curtiss-Rowlands block-billed this entry, the Court cannot ascertain what portion of the four (4) hours billed is attributable to the compensable activity as opposed to the non-compensable activity. However, common sense dictates that the bulk of the time was spent drafting the unsuccessful motion and affirmation in support.

23

DOL records" on May 13, 2013; the one and a half (1.5) hours he billed for "revis[ing] memorandum, affirmation, notice of motion and exhibits for motion in limine" on May 15, 2013; and the two and a half (2.5) hours he billed for "[p]reparing reply in support of motion in limine" on May 27, 2013, (Fragale Aff., Ex. D), must be excluded.[13]

Of the twenty-nine (29) billing entries of Mr. Curtiss-Rowlands, at least fifteen (15) contain one or more of the aforementioned improprieties justifying a reduction of the total number of hours for which an attorney's fee may be recovered. Accordingly, the eighty-eight (88) hours for which Mr. Curtiss-Rowlands seeks to be compensated at a full hourly rate are reduced across-the-board by fifty percent (50%), i.e., to forty-four (44) hours. Thus, plaintiff is awarded attorney's fees for the services performed by Mr. Curtiss-Rowlands at his full hourly rate, which, as set forth above, is one hundred dollars ($100.00), in the amount of four thousand four hundred dollars ($4,400.00).

Although defendants contend that Mr. Curtiss-Rowlands should not recover a full hourly rate for the four (4) hours he billed serving subpoenas on two (2) witnesses on May 23, 2013, (Def. Mem. at 13), he seeks to be compensated only travel time for such services, at a reduced rate of fifty percent (50%) of his hourly rate. Since there is nothing to warrant a reduction of Mr. Curtiss-Rowlands's sixteen and a half (16.5) travel hours, plaintiff is awarded attorney's fees in the amount of eight hundred twenty-five dollars ($825.00) for Mr. Curtiss-Rowlands's travel

---

[13] Mr. Fragale and Mr. Curtiss-Rowlands billed a total of thirteen and a quarter (13.25) hours researching and preparing a six (6)-page motion *in limine* that contained only two (2) points, and a total of three and three quarters (3.75) hours preparing a three (3)-page reply brief on the motion, which is duplicative and excessive and would justify reducing the total number of hours claimed by both attorneys even if their time spent working on the unsuccessful motion was not excluded.

time. Accordingly, the branch of plaintiff's motion seeking an award of attorney's fees is granted to the extent that plaintiff is awarded attorney's fees in the total amount of twenty-six thousand two hundred fifteen dollars ($26,215.00), and that branch of the motion is otherwise denied.

### B. Costs

Plaintiff seeks to recover one thousand seven hundred eighty-eight dollars and forty-one cents ($1,788.41) in costs for the three hundred fifty dollars ($350.00) filing fee; six hundred eighty-five dollars and twenty-five cents ($685.25) expended to obtain two (2) deposition transcripts; six hundred seventy-seven dollars and sixteen cents ($677.16) expended to obtain the trial transcript; and seventy-six dollars ($76.00) for photocopying expenses, (Fragale Aff., Ex. E), which defendants do not oppose.

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Section 1920 of Title 28 of the United States Code provides, in relevant part, that a district court "may tax as costs," *inter alia*, "(1) [f]ees of the clerk * * *; (2) [f]ees for printed * * * transcripts necessarily obtained for use in the case;" * * * [and] (4) [f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case * * *." See also Local Civil Rule 54.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Since "the losing party has the burden to show that costs should not be imposed," Whitfield v. Scully, 241 F.3d 264, 270 (2d Cir. 2001), and defendants do not oppose the imposition of costs, plaintiff is entitled to an award of costs.

The three hundred fifty dollar ($350.00) filing fee is statutory, see 28 U.S.C. § 1914(a), and plaintiff submits the invoices of Judicial Reporting Service, Inc. to support the taxation of costs in the amount of six hundred eighty-five dollars and twenty-five cents ($685.25) for the deposition transcripts. (Fragale Aff., Ex. F). However, the invoice of Paul Lombardi, RM, CRR, official court reporter for this Court, dated October 21, 2013, indicates that plaintiff was only billed six hundred sixty-three dollars and forty-eight cents ($663.48) for the trial transcript. Accordingly, plaintiff is only entitled to recover costs in the amount of six hundred sixty-three dollars and forty-eight cents ($663.48) for the trial transcript. Although plaintiff does not support the amount of seventy-six dollars ($76.00) that she seeks for photocopying fees with invoices, receipts, etc., nor indicate "that the copies were necessarily obtained for use in the case," Palm Bay International, Inc. v. Marchisi Di Barolo S.P.A., 285 F.R.D. 225, 238 (E.D.N.Y. 2012), since defendants do not object to the amount sought and it appears to be reasonable, plaintiff may recover the amount sought for photocopying expenses. Accordingly, the branch of plaintiff's motion seeking an award of costs is granted to the extent that plaintiff is awarded costs in the total amount of one thousand seven hundred seventy-four dollars and seventy-three cents ($1,774.73), and that branch of the motion is otherwise denied.

II.    CONCLUSION

For the reasons set forth above, plaintiff's motion for attorney's fees and costs pursuant to 42 U.S.C. § 12205 is granted to the extent that plaintiff is awarded attorney's fees in the total amount of twenty-six thousand two hundred fifteen dollars ($26,215.00) and costs in the total amount of one thousand seven hundred seventy-four dollars and seventy-three cents ($1,774.73),

26

for a total award of twenty-seven thousand nine hundred eighty-nine dollars and seventy-three cents ($27,989.73).[14]

SO ORDERED.

s/ Sandra J. Feuerstein

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: July 22, 2014
      Central Islip, New York

---

[14] Plaintiff has not sought interest thereon.